Finley's Estate.

Argued September 27, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*E. C. Higbee,* of *Higbee, Matthews & Lewellyn,* with him *William E. Hague,* for appellants.—The inventory and appraisement prima facie fixed the value of the bonds: Kalbfel's Est., 30 Pitts. L. J. 273; Semple's Est., 189 Pa. 385; Taylor's Est., 277 Pa. 518.

It is the duty of a personal representative to convert the assets within a year, and, even though this rule be not inexorable, none of the special circumstances or peculiar facts which in occasional cases may abate its vigor, here appear: Merkel's Est., 131 Pa. 584; Dauler's Est., 247 Pa. 356.

*H. S. Dumbauld,* for appellee, filed no printed brief.

OPINION BY MR. JUSTICE SIMPSON, November 28, 1932:

Thomas W. Finley died intestate and his widow was appointed administratrix of his estate. She filed an account, but died before it was settled. When it came up for audit, the court below directed that it should be restated, and her administrator, from the best information he could obtain, endeavored to comply with this direction. The administrator de bonis non of the husband's estate, and a creditor thereof, each filed exceptions to the restated account, which was audited by the court below, resulting in serious surcharges and a final decree of distribution. Not satisfied with the extent of the surcharges, each of the exceptants prosecuted one of the present appeals. In their statement of the questions involved, they contend that four additional surcharges

should have been made, and these we will consider in their order.

Among the assets of decedent, at the time of his death, were twenty-four $1,000 bonds of the General Investment Company. They were appraised at one-half their par value, but in fact could not be sold at any price. When the widow, as administratrix, filed her original account, she claimed an additional credit of $7,000, thus leaving an apparent liability of $5,000 against her. The way this arose was as follows: The widow and heirs, thinking there were ample assets to pay all the debts and leave a surplus for division among themselves, agreed to take these bonds and certain other unsalable stocks at a valuation of $5,000, "regardless of their [actual] value"; but when it was ascertained that the debts would more than absorb all the assets, so that they would not have any distributive shares, the administrator of the widow, in the restated account, claimed a credit for the entire $12,000, and this the court below allowed. It could not have done otherwise. There was no evidence that anything could have been realized on the bonds, at the time of or after decedent's death, and hence there was nothing upon which to base the surcharge.

The second objection is because the court below refused to surcharge the administratrix's estate with the sum of $3,558 realized from the sale of real estate belonging to decedent, and divided between the widow and children. The property was not sold by order of court, nor by virtue of any agreement to which the creditors were a party, nor had they kept alive the lien of their debts on the realty. Hence they had no right to any part of this fund. That the widow, under the mistaken advice of her counsel, had erroneously included it in her administration account, as prepared by him, could not operate to give the creditors any claim upon the fund; nor could it prevent her administrator, when wisely advised by more competent counsel, from excluding it from the restated account.

The third objection is to certain credits allowed "for taxes on coal lands in West Virginia." It would have been well if appellants had given heed to the admission in their brief that "The amounts are relatively small, and the point is of little importance." The sums paid by her were to protect the stocks and bonds of certain West Virginia coal companies, belonging to decedent but held as collateral by the creditor appellant, without the payment of which this asset would have been lost. It may be that, in the light of the subsequent depression through which we are passing, we can now see that it would have been better not to make these payments, but the widow's estate is not to be depleted because she was not wiser "in her day and generation than the children of light," and hence did not foresee the trouble ahead.

The final objection is to the allowance to her of $155.51 as commissions for her services. Here again appellants would have wisely heeded what they say in their brief: "The amount is too small to argue about," especially as they knew that, in the matters complained of, she acted on the advice of counsel who was competent at one time, but, through dissipation, had ceased to be so. The auditing judge found as facts, not challenged on these appeals: "There is no evidence of fraud on her part, but plenty of ill advice by counsel." "It is only fair to state on behalf of this helpless widow that she had poor legal aid, from one who had at one time been an able counselor, but an uncontrollable indulgence had impaired his abilities." In the light of these facts we see no reason why the widow's estate should be deprived of even the small commission allowed.

The decree of the court below is affirmed and each appeal is dismissed at the cost of the appellant therein.